UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CARL SMITH,                                      :

                Petitioner,          :          **MEMORANDUM DECISION**

         - v -                           :          19-CV-05813 (DC)

ERIC GONZALEZ,                                 :

              Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:              CARL SMITH
                          Petitioner *Pro Se*
                          16-A-2564
                          Mohawk Correctional Facility
                          Rome, NY  13442

                          ERIC GONZALEZ, Esq.
                          District Attorney, Kings County
                          By:    Leonard Joblove, Esq.
                                 Jean M. Joyce, Esq.
                                 Assistant District Attorneys
                          350 Jay Street
                          Brooklyn, NY  11201
                                 Attorney for Respondent

CHIN, Circuit Judge:

         In 2016, following a jury trial, petitioner Carl Smith was convicted in

the Supreme Court of the State of New York, Kings County (Jeong, *J.*), of grand

larceny in the second degree (two counts), grand larceny in the third degree (two

counts), offering a false instrument for filing in the first degree (two counts),

unlicensed practice of law (one count), and criminal possession of a forged

instrument in the second degree (one count).  Smith was sentenced as a second

felony offender to an aggregate indeterminate term of nine to eighteen years'

imprisonment.  *See* Dkt. 8 at 9.  His convictions were affirmed by the Appellate

Division, Second Department, *People v. Smith*, 97 N.Y.S.3d 281 (2d Dep't 2019) ("*Smith*

*I*"), and the New York Court of Appeals denied his application for leave to appeal,

*see People v. Smith*, 129 N.E.3d 345 (N.Y. 2019) (DiFiore, C.J.) ("*Smith II*").

On October 15, 2019, proceeding *pro se*, Smith filed the instant petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  *See* Dkt. 1.

Smith argues that (1) the evidence supporting the grand larceny counts was legally

insufficient; (2) the evidence supporting the offering a false instrument counts was

legally insufficient; and (3) he had ineffective assistance of trial and appellate

counsel.  *See id.* at 9, 16, 20.  The Kings County District Attorney's Office filed its

opposition to the Petition on March 4, 2020.  *See* Dkt. 8.  On January 17, 2023, the case

was reassigned to the undersigned.

For the reasons set forth below, Smith's petition is DENIED.

## BACKGROUND

I.      *The Facts*[1]

The evidence at trial established the following:

---

[1]      The facts are drawn from the affirmation submitted in opposition to the
Petition.  The recitation of facts set forth in the affirmation are supported by detailed
citations to the record, including the trial transcript.  *See* Dkt. 8.

In 2011 and 2012, Smith filed forged deeds and other documents with the New York City Department of Finance's Office of the City Register (the "City Register") to obtain various parcels of real property in Kings County.  Smith offered these properties for sale to prospective buyers as the seller or as a New York State attorney representing a seller. *See id.* at 1-2.  Kenneth Hood, a former police officer and notary, notarized several documents for Smith.  Hood did not verify any signatures and backdated his notary stamp at Smith's request. *See id.* at 2-3.

### A.    *The 139 Vanderbilt Avenue Property*

In the early 1980s, Delores Teel ("Delores") purchased a residential building at 139 Vanderbilt Avenue in Brooklyn from Errol Crawford.  In December 2001, Delores died intestate, and her heirs included her stepdaughter, Rina Teel ("Rina"), who was the administrator of the estate.  Rina and other family members maintained the 139 Vanderbilt Avenue property from 2001 through 2012. *See id.* at 3.  In 2011, the Teel family attempted to sell the property for $1,025,000, but they were unable to complete the sale because Smith's name was on the deed.  The deed had been filed with the City Register on April 14, 2011, but it purported to record a transfer of the property from Delores to Smith on April 4, 2000.  Hood notarized and backdated the deed and related documents at Smith's request.  Hood did not verify Delores's signature, and Rina, who was familiar with Delores's signature, testified that she did not recognize the signature on the deed and related documents. *See id.* at 3-4.

In 2011, the Teel family retained attorney Steven Erlitz to commence a lawsuit against Smith and Hood to set aside the deed.  Smith offered Erlitz $100,000 or

3

$150,000 for the Teel family to "walk away." *See id.* at 4.  Around the same time, Smith hired attorney Michael Apisiga to represent him in the sale of the property and hired Fillmore Real Estate to list the property for sale with a listing price of over one million dollars.  Apisiga prepared contracts for several prospective buyers but faced a title issue. *A lis pendens* was filed on the property, which prevented it from being sold with clear title.  Apisiga held payments from prospective purchasers in trust and refunded them when the sales were unable to go through.  Apisiga terminated the attorney-client relationship with Smith after speaking with Erlitz. *See id.* at 3-4.

In approximately 2013, Robert Loheit sent letters addressed to the owner of 139 Vanderbilt Avenue expressing interest in purchasing the property.  Smith called Loheit and set up a meeting in person.  Smith presented Loheit with documentation indicating that Smith was the owner of the property and offered to sell it for $350,000.  Loheit researched the chain of title and did not proceed with the purchase. *See id.* at 5.

### B.    *The 64 Hart Street Property*

Jennifer Stith owned a residential property at 64 Hart Street in Brooklyn and had lived in the ground floor unit for most of her adult life.  Her mother, Mary Brown, had died in 1994, and following the death of her father in 2011, Stith decided to sell the property.  She entered into a contract of sale with Chris and Adell O'Neil, but later discovered that because the deed had been transferred to Cheskel Parnes, the sale could not go through. *See id.*

In September or October 2012, Parnes had been approached on the street by a person named Sean Smart who claimed he was a real estate broker.  Smart offered

4

to sell 64 Hart Street to Parnes for $200,000 on the condition that the current owner,

Brown, would reside on the first and second floors of the house until her death.  When

Parnes insisted that the seller have an attorney, Smart told Parnes that Smith, the

petitioner, was an attorney and would assist with the sale of the house.  Smith was not

an attorney.  *See id.* at 5-6.

Parnes met with Smith and Smart, and they discussed the sale.  Parnes

received a contract and a deed dated October 30, 2012, which he registered with the

City Register.  The purchase price was $180,000, and the related documents were

purportedly signed by Brown.  Stith confirmed, however, that the signatures were not

her deceased mother's.  Parnes gave Smith between $3,500 and $4,000 in cash and gave

$25,000 in total to five individuals claiming to be involved with Smith or purporting to

be Brown and her granddaughter.  Parnes never paid the contract price of $180,000.  *See*

*id.* at 6-7.

Stith had never met Smith or had any dealings with him.  She paid over

$50,000 in legal fees to cure the title, which took approximately four years.  She then

sold the property to the O'Neils for approximately $700,000.  *See id.* at 7.

C.    *The 45 Lewis Avenue Property*

In 1999, Javier Cortes bought from the City of New York a vacant lot at 45

Lewis Avenue in Brooklyn.  Cortes never sold or attempted to sell 45 Lewis Avenue to

anyone, nor did he know Smith or ever engage in any real estate transactions with him.

*See id.*  On February 10, 2011, a deed and related documents for 45 Lewis Avenue were

filed with the City Register purportedly showing the transfer of the property from

Cortes to Smith on May 9, 2008, in consideration of ten dollars.  The documents were notarized by Hood.  The signature, Social Security number, and address on the deed and related forms were not Cortes's, and he had not seen the deed before it was shown to him at trial.  *See id.* at 7-8.

Cheung Yuen Chiu owned the neighboring lot at 43 Lewis Avenue.  Smith approached Cheung in 2011 and told him that he was selling 45 Lewis Avenue.  Cheung paid Smith $12,000 in cash to purchase the property.  *See id.* at 8.  Cheung did not obtain a title report but checked the deed at the City Register and saw that Smith was listed as the owner.  Cheung and Smith went to City Hall and recorded a deed and related documents, transferring title of the property.  They signed a transfer report, had one of the documents notarized, and dropped off the documents at the City Hall Clerk's office.  Smith told Cheung to pay the recording fee and that he would receive confirmation within two weeks that the deed had been recorded.  Cheung never received any confirmation from the City Register.  *See id.*

In 2011, Smith also approached Lamar June and asked if he was interested in purchasing 45 Lewis Avenue, the neighboring lot to June's house.  Over the span of a month, Smith and June met three or four times and agreed on a purchase price of $13,000.  June paid Smith $11,000 and agreed to pay the rest later.  On April 25, 2011, Smith and June asked Apisiga to help them record a deed for 45 Lewis Avenue.  Apisiga notarized the signatures and sent the deed and related documents to the City Register for recording.  He was also listed on the title report as an attorney for the seller without his consent.  *See id.* at 8-9.  Later, June approached Cheung and claimed to be

6

the owner of 45 Lewis Avenue, showing Cheung a document that named June as the owner. June installed a gate on the property and kept his car there. *See id.* at 9.

II.   ***Procedural History***

    A.   ***State Court Proceedings***

    Smith was first indicted on July 11, 2013. A second indictment was filed charging him with additional crimes on January 8, 2015. *See id.* at 2. On May 20, 2015, the Supreme Court of the State of New York, Kings County (Chun, J.), granted the People's motion to consolidate the two indictments. *See id.*

    The case proceeded to trial, and the jury returned a verdict on May 23, 2016, convicting Smith of two counts of grand larceny in the second degree, two counts of grand larceny in the third degree, two counts of offering a false instrument for filing in the first degree, one count of unlicensed practice of law, and one count of criminal possession of a forged instrument in the second degree. Smith was sentenced as a second felony offender to an aggregate term of nine to eighteen years' indeterminate imprisonment. *See id.* at 9. The court also ordered the nullification of the deeds at 139 Vanderbilt Avenue and 45 Lewis Avenue and noted that the true owner of 64 Hart had successfully brought an action to quiet title of that property. *See id.*; Dkt. 8-3 at 324.

    Represented by counsel, Smith appealed from the judgment of conviction in the Appellate Division, Second Department, on the grounds that (1) the evidence was legally insufficient to support his convictions for second-degree and third-degree grand larceny, and that the verdict on those counts was against the weight of the evidence; (2) the evidence was legally insufficient to support his convictions for the felony offense

of offering a false instrument for filing because there was no evidence of intent to defraud the State; and (3) he received ineffective assistance of trial counsel. *See* Dkts. 8 at 9-10; 8-4. On April 17, 2019, the Appellate Division affirmed Smith's judgment of conviction. *See Smith I*, 97 N.Y.S.3d at 282. The court held, with respect to the grand larceny convictions, both that the insufficiency of evidence claim was "unpreserved for appellate review" and that, in any event, the evidence was "legally sufficient" to establish Smith's guilt. *Id*. The court also concluded that Smith "was not denied the effective assistance of counsel," and that Smith's attorney provided "meaningful representation." *Id*. at 282-83 (citing New York cases). Finally, although the court did not explicitly discuss the offering a false instrument counts, the court held that "[t]he defendant's remaining contention is without merit." *Id*. at 283.

On June 21, 2019, the New York Court of Appeals denied Smith's application for leave to appeal. *See Smith II*, 129 N.E.3d 345.

On August 30, 2019, Smith filed *pro se*, in the Supreme Court of the State of New York, Kings County, a motion to vacate judgment under N.Y. Criminal Procedure Law § 440. The motion enumerated eight grounds, including that there was insufficient evidence of grand larceny, he received ineffective assistance of counsel, and the prosecution for unlicensed practice of law was time-barred. *See* Dkt. 8 at 10-11. On May 11, 2021, in a nine-page decision, the Supreme Court denied the motion, and on September 8, 2021, the Appellate Division, Second Department denied Smith leave to appeal that decision. *See* Dkts. 11-3; 14.

8

**B.**   *Proceedings Below*

On October 15, 2019, Smith filed the Petition, raising essentially the same claims he raised in his direct appeal to the Appellate Division: (1) insufficiency of evidence for the grand larceny counts, (2) insufficiency of evidence for the offering a false instrument count, and (3) ineffective assistance of counsel. *See* Dkt. 1 at 9, 16, 20. On March 4, 2020, Respondent timely filed an opposition to the Petition. *See* Dkt. 8. On June 5, 2021, the Court ordered Respondent to file a letter listing all pending and concluded state court litigation and the status of that litigation. Respondent filed letters and court records in compliance with this order. *See* Dkts. 11-14. On January 17, 2023, the case was reassigned to the undersigned.

## DISCUSSION

**I.**   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling

9

only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

"Federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citations omitted). Federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," as long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103, 104 (2d Cir. 2011) (citations omitted). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate

state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Defendants in a criminal trial have a right to be convicted with proof establishing their guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 323 (1979). When reviewing a claim that the evidence introduced at trial was insufficient to sustain a defendant's conviction, the reviewing court applies the standard set forth in *Jackson* to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). In this analysis, the court "must look to state law to determine the elements of the crime." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). A "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Id.* (citation and internal quotation marks omitted). Indeed, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (internal quotation marks omitted).

Finally, in general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient

11

as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable possibility" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 688, 694 (1984). In the context of a habeas petition pursuant to 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations omitted). Therefore, "[t]he operative question" when a federal court reviews "a state court's *Strickland* ruling is thus not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (cleaned up).

The standard to establish an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)). Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance, *see Alvarez*, 125 N.E.3d at 120.

12

II.   *Analysis*

Smith raises three claims in his habeas petition:  (1) insufficient evidence with respect to the grand larceny counts, (2) insufficient evidence with respect to the offering a false instrument counts, and (3) ineffective assistance of trial and appellate counsel.  I address each claim in turn.

A.   *The Sufficiency of the Evidence of Grand Larceny*

Smith argues that the evidence to establish grand larceny of real property was legally insufficient based on the theory that because a void deed cannot transfer property, a void deed cannot be the basis of a conviction for grand larceny of real property, citing *Marden v. Dorthy*, 54 N.E. 726 (N.Y. 1899), and *Faison v. Lewis*, 232 N.E.3d 220 (N.Y. 2015).  *See* Dkt. 1 at 5, 9.  Smith did not, however, make this argument at trial.  *See* Dkt. 8-4 at 61 ("Defendant never raised this claim [that a forged deed cannot transfer property] at trial . . . .").

The Appellate Division, citing the contemporaneous objection rule, held that Smith's contention that the evidence of grand larceny was legally insufficient was "unpreserved for appellate review."  *Smith I*, 97 N.Y.S.3d at 282 (citing *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008); N.Y. Crim. Proc. Law § 470.05 (McKinney)).  The Appellate Division's determination, which was based on an adequate and independent state ground, bars this Court from reviewing the merits of the claim.  *See Cone*, 556 U.S. at 465.  Indeed, Smith has also not demonstrated cause for the default or shown that failure to consider the claims will result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 724.

13

In any event, Smith's legal insufficiency claim as to the grand larceny counts is without merit.  "[C]onsider[ing] the evidence in the light most favorable to the prosecution and mak[ing] all inferences in its favor," *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000), the Appellate Division found that the evidence was legally sufficient and that the guilty verdict was not against the weight of the evidence.  The Appellate Division considered the definition of larceny in N.Y. Penal Law § 155.05 and highlighted that the definition includes the term "obtain," which is further defined as including "the bringing about of a transfer or *purported transfer* of property or of a legal interest therein, whether to the obtainer or another." *See Smith I*, 97 N.Y.S.3d at 282 (quoting N.Y. Penal Law §§ 155.00 (1),(2)) (emphasis added).  The Appellate Division concluded that evidence adduced at trial, including the testimony of several credible eyewitnesses, established beyond a reasonable doubt that Smith filed forged deeds and other documents with the City Register to obtain, for himself or others, three properties in Brooklyn and "that he did so with the intent to deprive the true owners of their properties" for his own financial benefit.  *See id.*

Smith argues that a forged deed is "a legal nullity" because New York courts have held that a forged deed is void.  *See* Dkt. 1 at 11.  The definition of "obtain" under New York Penal Law § 155.00, however, prohibits the *purported* transfer of property.  The evidence established that Smith brought about the purported transfers of real property to himself.  Therefore, the Appellate Division correctly rejected his contention that the evidence to support the grand larceny

14

counts was legally insufficient.  The Appellate Division's decision was not an unreasonable application of federal law under *Jackson*, nor was it objectively unreasonable.  *See Jackson*, 443 U.S. at 319; *Coleman*, 566 U.S. at 651.

Accordingly, Smith's sufficiency of the evidence claim as to the larceny counts fails.

**B.**   *The Sufficiency of the Evidence of Offering a False Instrument for Filing*

Smith argues that the evidence was legally insufficient to establish offering a false instrument for filing because there was no evidence presented at trial showing intent to defraud the State as required by N.Y. Penal Law § 175.35.  *See* Dkt. 1 at 16.  The Appellate Division determined that Smith's contention was without merit.

The felony offense of offering a false instrument for filing in the first-degree requires that the defendant,

> knowing that a written instrument contains a false statement or false information, and with *intent to defraud the state or any political subdivision* [thereof,] . . . offers or presents it to a public office [or] public servant . . . with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office.

N.Y. Penal Law § 175.35 (emphasis added).

The evidence at trial established that Smith filed fraudulent deeds and other documents with the City Register, a public office that maintains and relies on the veracity of filings.  His repeated filings of fraudulent documents demonstrated an intent to defraud the City Register, and thus, the State.  The Appellate Division's

conclusion that the evidence was legally sufficient to convict Smith of offering a false instrument for filing was not objectively unreasonable. *See Coleman*, 566 U.S. at 651. Therefore, Smith's sufficiency of the evidence claim as to the larceny counts fails as well.

### C.    *Ineffective Assistance of Trial and Appellate Counsel*

Smith claims that he received ineffective assistance of trial counsel because counsel was unaware of relevant case law that holds that a void deed is a nullity. *See* Dkts. 1 at 20-22; 8 at 40.  Smith claims that trial counsel did not seek dismissal of the grand larceny of real property charges as a matter of law and that, if trial counsel had sought such dismissal, Smith would have been acquitted of these counts. *See* Dkt. 1 at 20.  The Appellate Division determined that Smith was not deprived of the effective assistance of counsel and that "[v]iewed in totality," counsel provided "meaningful representation." *Smith I*, 97 N.Y.S.3d at 282-83 (citing *People v. Benevento*, 697 N.E.2d 584, 712 (N.Y. 1998); *Baldi*, 429 N.E.2d at 405).  Although the Appellate Division did not cite *Strickland* in its analysis, it cited two state court cases that describe New York's own standard for determining the effectiveness of counsel, and the Second Circuit has recognized that New York's test is not contrary to *Strickland*. *See Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010).  If a state court did not apply *Strickland*, but held that counsel was effective under the New York standard, the petitioner must establish that the state court unreasonably applied *Strickland*. *See id.*

16

A defendant has the right to the assistance of counsel who has reviewed the relevant law and facts to the defense. *See People v. Droz*, 348 N.E.2d 880, 882 (N.Y. 1976); *People v. Butler*, 462 N.Y.S.2d 263 (2d Dep't 1983). To establish that the state court unreasonably applied *Strickland*, Smith must show that counsel's performance fell below an objective standard of reasonableness and that "but for" counsel's performance, there was a reasonable probability that the outcome would have been different. *See Strickland*, 466 U.S. at 694.

The evidence was legally sufficient to establish the grand larceny counts. Therefore, Smith has not shown that but for counsel's performance, the outcome would be different. Additionally, counsel's performance did not fall below an objective standard of reasonableness just because counsel decided not to assert the meritless argument that Smith raised on appeal regarding the legal nullity of void deeds. There is a "'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects . . . tactics rather than 'sheer neglect.'" *See Harrington v. Ritcher*, 562 U.S. 86, 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The Appellate Division's ruling is not objectively unreasonable. Accordingly, there was no error of constitutional magnitude as to Smith's trial counsel.

Smith further contends that he received ineffective assistance of appellate counsel because appellate counsel failed to present to the New York Court of Appeals his claim that the transfer and recording of a void deed does amount to grand larceny. *See* Dkt. 1 at 22. While Smith's letter of application to the New York

17

Court of Appeals did not specify which issues he was presenting, counsel wrote, "I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion. . . . We request this Court to consider and review all issues outlined in defendant-appellant's brief." Dkt. 8-5 at 2. Smith's claim as to grand larceny was covered in "Point I" in the Appellate Division brief. Dkt. 8-4 at 4. Furthermore, in *Galdamez v. Keane*, the Second Circuit held that the petitioner properly exhausted his claims when along with the letter of application for leave to appeal to the New York Court of Appeals, petitioner submitted a copy of the Appellate Division's decision and later provided the briefs that were submitted to the Appellate Division. 394 F.3d 68, 76 (2d Cir. 2005) ("Because the briefs fairly presented the federal claims, and Galdamez's leave application reasonably could be construed only as a request for further appellate review of all issues in the attached briefs, we hold that Galdamez properly exhausted his federal claims before the Court of Appeals."). Smith's claims were presented to the New York Court of Appeals. Thus, there was no error of constitutional magnitude on the part of Smith's appellate counsel.

## CONCLUSION

Smith has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Smith has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.

    The Clerk of Court is respectfully directed to mail a copy of this

memorandum decision and the judgment to Smith at his last address of record.

    SO ORDERED.

Dated:      New York, New York
            March 21, 2023


                                    _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting By Designation